RAILWAY COMPANY *v.* TORREY.

Opinion delivered November 25, 1893.

1. *Master and servant—Negligence of foreman.*

A master is not liable for an injury to a servant caused by the negligence of a foreman occupying the position of vice-principal, while performing an act of labor in common with the labors of the servant, unless his own negligence as master contributed with that of the foreman as a laborer to produce the injury.

2. *Liability of master for negligence of vice-principal.*

If it be conceded that a foreman in charge of a gang of bridge carpenters, with authority to direct when and where they shall work, is a vice-principal, it is error to charge that an employee can recover if he was negligently ordered by such foreman to a dangerous position, and, while in that position and by reason thereof, was injured, when he himself was exercising due care; the charge should state, as far as practicable, the facts which, if proved, would make the order negligent, and these facts must have been such as involve a failure to perform some duty which the company owes to the employee.

3. *Duty of master to warn servant.*

An instruction that it is the duty of the master to warn an inexperienced servant of the dangers liable to be encountered by him in the performance of his duties is not proper where there is no evidence tending to prove either that plaintiff was without experience; or that the master knew, or ought to have known, that he was inexperienced; or that experience was necessary to enable him to do with safety the act in the performance of which he was injured.

Appeal from Monroe Circuit Court.

ROBERT J. LEA, Judge, on exchange of circuits with Grant Green, Jr.

STATEMENT BY THE COURT.

This was an action to recover damages for a personal injury sustained by the plaintiff while he was serving the railway company as a bridge carpenter under the direction of one Sanford, who was foreman of a

gang of men engaged in repairing a bridge over White river. The complaint alleges that the plaintiff was ordered by the foreman "to hold a certain block and tackle which had been negligently wrapped around a stay on the bridge, so as to allow an engine to pass, and that while holding the block and tackle the passing engine caught the rope attached to the block and caused the block to strike him upon the head." The answer denied that the block and tackle were negligently wrapped, and stated that the injury was caused by the negligent manner in which the plaintiff held the block and tackle.

On the trial of the cause, which was before a jury, the plaintiff testified that he was 32 years old. That in September, 1888, he entered into the service of the appellant, as a bridge carpenter, under L. M. Sanford, foreman, and on the 28th day of November, some two months afterwards, they were engaged in repairing White river bridge, and were lowering a shaft that had a rope fastened to a lateral or cross-beam at the top of the bridge immediately over the center of the track. The other end of the rope was attached to a block weighing some ten to twenty pounds. That, while the shaft was being lowered, an engine approached the end of the draw, some eighty feet from where they were engaged at work. The foreman took the rope and block, which were suspended from the top of the bridge some twenty feet above the track, and wrapped it around an iron brace or stay extending from the floor of the bridge near the track to the top of the bridge. He wrapped the rope around the stay some three or four feet from the floor, and told the appellee to hold it until the engine passed. That he did not know whether the engine was approaching at the time he took hold of the rope. He did not let the rope slacken at all but held it where it was when he took it. The engine approached at once, and one

corner of the cab caught the rope, and jerked it loose from him, and in unwrapping it from around the brace the block struck him over the eye, and inflicted a painful injury. There was a walk some five feet wide on the floor of the bridge and north of the track, extending from one end to the other. The brace around which the rope and block was wrapped was between the walk and the railway track. That he stood on the platform holding the rope, and it was just long enough to be wrapped twice around the brace. That the block was up against it, and he held the hook at the end of the block. The rope was wrapped around a brace north, or up the river from the track, and between the track and the platform of the bridge. That he was looking at the engine when it approached, and not looking at the rope when it was caught on the corner of the cab. If the foreman called him, he did not hear him. That he was five feet and a half high, and might have held the rope high enough for the engine to pass with his hands, by taking hold of it a short distance from the brace and pressing it up, but he did not know it would be caught at the corner of the cab until it was too late. He had never seen a rope held back for an engine to pass before, and was not warned as to the danger incurred in the work.

Sanford testified that, on the 28th day of November, 1888, he was repairing the drawbridge at Clarendon, and had a block and tackle, one end fastened to the top of a lateral brace and the other end fastened to a shafting on which was a cog-wheel ready to be lowered, when an engine came up to the end of the draw and stopped. He had the flag at the usual place at the end of the draw. The engine stopped, and the conductor came to the flag and seemed very impatient to get across, and walked past the flag and came up to the center of the bridge, and when he got there he informed him that he could pass in a very few minutes. The engine

started on the drawbridge, and he seized the lower end of the rope and swung it around a column on the upstream or north side of the track, and told the plaintiff to hold the slack that was in the rope up close to the upstream side of the bridge so the engine could pass. By this time the engine was very close to the rope, and he noticed that the engine or something else had attracted Mr. Torrey's attention to such an extent that he wasn't noticing the rope he held, and he told him to hold it. That he was looking at the engine, and had let the rope slacken, and one strand of it caught on the corner of the cab, and the rope was drawn from around the brace, the block striking Mr. Torrey in the face, knocking him down. When he saw the rope was slackened, he spoke to the appellee once or twice, but failed to attract his attention. The speed of the train was from three to five miles per hour. On cross-examination he said that if Mr. Torrey had held the rope in the position he took it, the cab of the engine would not have caught it, and if Mr. Torrey had not permitted the rope to slacken, the accident would not have happened.

The plaintiff also read the deposition of the same L. M. Sanford, taken March 10, 1892, in which he testified that he had written a letter to the plaintiff in which he stated that he gave no signal for the engine to pass, and that the conductor flagged the train over the bridge without his authority. That the engine was on them so quick and at such speed that there was little or no time for planning safety either way; and as to whether Mr. Torrey permitted the rope to slacken when the engine passed he could not say. That engines were not permitted to pass over the bridge at a speed exceeding six miles per hour, under the rules of company, until signaled to do so by him. That the engine at the time of the accident was running above the speed allowed by the company. That the appellee was not as familiar

with the way in which to hold the block and rope out of the way of passing engines as other men in his employ, but he possessed the requisite activity to hold the rope back, and that the rope had been held back sufficiently far to allow an engine to pass when hanging in the same position.    He saw that something had directed the plaintiff's attention to the engine, and that the rope had slackened somewhat, and he was then commanded to be careful and hold the rope further back out of the way, but before his attention could be called to it the corner of the cab caught the rope.    That the plaintiff had ample time in which to hold the rope in such a manner that the passing engine would not have caught it.

The defendant introduced John Williams who testified that he was a locomotive engineer, and had been for nine years ; that he was on an engine on defendant's road on the 28th day of November, 1888, and that when they reached the White river bridge, Sanford, the foreman of the bridge gang, was engaged in lowering a shafting about the center of the draw.    The rope and block were suspended from the center of the top of the bridge, and this rope was wrapped around a brace on the up river side of the bridge by the foreman, and given to one of his men to hold before he received a signal from his conductor to move forward.    That he saw the rope wrapped around the brace before he pulled out, and thought the engine would pass clear.    He did not know whether he saw the plaintiff holding the rope or not ; he saw some one of the hands, and as he passed the cab of the engine caught the rope, and jerked it from around the brace, and it struck the tender.    He did not know that it struck the plaintiff until they reached Brinkley. That they were not allowed to pass over a bridge at a greater speed than four miles per hour, and that he was running at the rate of not more than three or four miles per hour when he passed over the draw.

This is all the evidence that was introduced on the trial of the cause.

The charge of the court seems to have proceeded upon the assumption that the injury received by the plaintiff was due to one or more of the following causes :

(1) To the negligence of the conductor or engineer in going over the bridge without a signal from the foreman, or at an unusual rate of speed ; (2) to the negligence of the foreman in ordering the plaintiff to hold the block and tackle, without warning him of the danger to which he would be exposed in doing so ; (3) to the negligence of the plaintiff himself in failing to adjust or hold the rope in a proper manner.

The court gave instructions on all these points, and an exception was taken to each instruction. But in the argument of the cause only the exceptions to the fourth, fifth, sixth and ninth instructions have been insisted upon.

The defendant's second request, referred to in the opinion, was refused by the court, and is as follows :

"2. The jury are instructed that a bridge carpenter, an engineer, and a conductor when engaged in operating a railroad in the service of the same company, are fellow servants ; and a foreman of a bridge gang, so far as any work or labor done or performed by him, is also a fellow servant with a carpenter in the same service ; and this is so, even if the foreman had a right to employ and discharge the carpenter. And if the plaintiff was injured either by want of attention or ordinary care on his part, or by the negligence of the engineer or conductor, or by the failure of the foreman to perform his tasks or work undertaken by him in a skilful manner, they will find for the defendant."

The court's fourth, fifth, sixth and ninth instructions are as follows :

"4.   A foreman of the defendant in charge of a force of bridge carpenters, with authority to hire and discharge such carpenters, and to direct when and where they should work, would not be a fellow servant of such men under his control; and if the jury believe that the plaintiff, while in the employ of the defendant, and while working under the control and direction of a foreman, was negligently and carelessly ordered by said foreman to a dangerous position, and that while occupying that dangerous position, and by reason thereof and of said order, he was injured while he himself was exercising due care, the plaintiff may recover for such injuries.

"5.   A person in the employ of another, upon work which is by both the employee and the employer known to be dangerous, must himself exercise ordinary care to avoid his own injury, and if the injury is the result of his own rashness in going into a dangerous place, he cannot recover ; but it is the duty of an employer, and of his foreman when he employs a foreman to control and direct his workmen in their work, to warn an inexperienced workman of the dangers liable to be encountered by him in the performance of his duties, but he would not be required to do this if by reason of his age and experience in such work the workman may be presumed to be aware of such danger.

"6.   If the jury believe that the plaintiff was injured by reason of attempting to hold the block and rope under the order of his foreman, then, in arriving at a conclusion as to whether said foreman or the plaintiff was guilty of negligence, they may take into consideration their age and experience, and their means of knowing whether the position he was ordered to take was dangerous or not, and all other circumstances surrounding the injury ; and if they believe from the evidence that the plaintiff was carelessly ordered by his foreman to take hold of the block and rope while the train was coming, that the

position was dangerous, and that the plaintiff, by reason of his inexperience, was unaware of the danger, and that the foreman failed to warn him, and that the injury to the plaintiff was the direct result of such carelessness on the part of his foreman, the jury will find for the plaintiff.

"9.  The jury are instructed that if they find from the evidence that the plaintiff could have, by the use of ordinary care and attention, seen that the rope was not high enough to permit the engine to pass, and took hold of the rope, and held it without protest or an attempt to adjust it so as to permit the engine to pass clear, or otherwise protect himself from the approaching engine, he could not recover ; but, in arriving at their conclusion as to whether the plaintiff was in the exercise of ordinary care at the time he received the injury, the jury may take into consideration his skill and experience and the length of time he had been engaged in such work as he was then performing."

The verdict was for the plaintiff, and from the judgment rendered upon it the defendant has appealed.

*J. C. Hawthorne* and *Sam H. West* for appellants.

1.  It may be conceded that the foreman, so far as giving orders to appellee, was a vice-principal ; but, as to any act which related to the performance of his duties as a co-laborer, he was not a vice-principal, but a fellow servant.   In wrapping the rope around the brace, he was a fellow servant.   108 Ill. 576; 35 Ark. 602; 41 Ark. 382; 17 N. Y. 153; 55 N. Y. 608; 81 *id.* 516; 105 *id.* 159.

2.  The court erred in refusing the seventh direction.   5 Oh. St. 541; Wood, Master and Servant, 763–766; 63 N. Y. 449; 76 *id.* 125.

3.  There was no testimony that appellee was inexperienced, or that appellant knew that he was un-

skilled.   5 N. E. Rep. 187; 139 Mass. 580; 17 Wall 554; 106 N. Y. 512, 518.

4. Plaintiff must abide the consequences of his own negligence.   39 Ark. 17.

*H. A. Parker* for appellee.

1.   The law was fully given in the instructions, and it was not error to refuse another code of instructions on part of appellant.   It would simply have misled the jury.   38 Ark. 344.

2.   The law of this case is fully settled by this court.   48 Ark. 345; 44 *id.* 300; 53 *id.* 458.

3.   Sanford was a vice-principal.   44 Ark. 529; 35 *id.* 602; 39 *id.* 28; 17 S. W. Rep. 748.

4.   It is the duty of one engaged in a *complex* business to establish definite regulations for the protection of his employees, and a failure to adopt such rules, as well as a laxity in their enforcement, is regarded as negligence *per se.*   3 Wood, Ry. sec. 382; 54 Ark. 289.

5.   Appellee only assumed the *ordinary* risks.   54 Ark. 297; 20 S. W. Rep. 1090.

6.   There was no proof of contributory negligence, and the burden was on the company.   48 Ark. 345.

7.   Being inexperienced, and having no knowledge of the danger, appellee was entitled to protection.   54 Ark. 117; *ib.* 458; 21 S. W. Rep. 631; 46 Ark. 396; Sh. & Redf. Neg. 140 to 150.

8.   The second instruction for appellee is supported by 18 S. W. Rep. 178.   The love of life and the instinct of self-preservation will stand for proof of care until the contrary appears.   18 S. W. 178; 66 Pa. St. 399; 78 Mo. 212.

9.   The second and third asked by appellant are in the face of 54 Ark. 117.   The fifth is too liberal to defendant.   117 Mass. 407; 21 S. W. 631.   If Sanford knew this was a dangerous place, or could have known

it by exercising his duty, and put appellee in said place, and he was injured, then appellant is liable.   17 S. W. 743.

1. Doctrine of fellow servants applied.

MANSFIELD, J., (after stating the facts.)   In the matter of merely wrapping the rope of the block and tackle around the brace of the bridge, the foreman was not performing a master's duty, but an act of labor in common with the labors of the plaintiff; and as to that act we think the foreman and the plaintiff were fellow servants.   If therefore the accident was caused by the foreman's negligence in wrapping the rope, the defendant was not liable unless its own negligence as master combined with that of the foreman as a laborer, to produce the injury.*   The defendant's second request, then, so far as it goes, is consistent with the law ; and it was not proper that it should go further, unless there was evidence to justify the court in submitting to the jury the question whether the company was guilty of contributory negligence.   The only fact relied upon to prove such negligence was the order directing the plaintiff to hold the block and tackle.   As that might have been given by one who had no authority beyond that of overseeing the labor of the carpenters, it would not, in itself, have warranted a finding that the foreman was acting in a representative capacity ; and if he exercised only the power of a mere foreman, then his negligence was not the negligence of the defendant.†   The court's fourth instruction assumes that there was evidence to show that he had authority to hire and discharge the carpenters.   The abstracts do not embrace such evidence.   If, however, it was adduced on the trial, its

---

*See Wood on Master and Servant, sec. 438 ; 1 Shearman & Redfield, Neg. sec. 233 ; *Fones* v. *Phillips,* 39 Ark. 17 ; *Crispin* v. *Babbitt,* 81 N. Y. 516; *Quinn* v. *New Jersey Lighterage Co.* 23 Fed. Rep. 363 ; *Railway Co.* v. *Triplett,* 54 Ark. 299 ; 2 Thompson, Neg. sec. 10, p. 981.

† *Fones* v. *Phillips,* 39 Ark. 39 ; *Bloyd* v. *Railway Co. ante,* p. 66.

tendency to prove that the company was responsible for any negligence committed by the foreman in giving the order complained of did not necessarily call for the absolute rejection of the defendant's second request, but only for its modification by the addition of a clause requiring the jury to determine whether there was such negligence, and if there was, whether it contributed to the accident. In refusing the request, and in omitting to make his charge touch upon the point it presents, the trial judge probably held that there was no evidence from which the jury could have reasonably found that the negligent wrapping of the rope was the dominant cause of the injury. But the position in which the rope was found when the engine reached it in passing over the bridge, according to the view we get of it from the record, was such that we think the jury might have concluded that, if it had been properly wrapped, it would not have sagged so as to come in contact with the cab; and that the untimely approach or speed of the train allowed no opportunity to adjust the rope after the plaintiff could with reasonable diligence have discovered the necessity of doing so. On this theory the plaintiff's injury might therefore have been attributed entirely to the negligence of his fellow servants; and as it was a theory not without support in the evidence, a charge applicable to it might properly have been given.

As already indicated, we are not prepared to hold that the court was right in assuming that there was evidence from which the jury might have found the existence of facts sufficient to make the foreman a vice-principal. Conceding, however, for the purposes of this opinion, that there was such evidence, the fourth instruction was not in other respects correct. It told the jury that the plaintiff was entitled to recover if it was shown that he was negligently and carelessly ordered " by the foreman to a dangerous position, and that, while occupy-

2. Negligence of vice-principal.

ing that dangerous position, and by reason thereof and of said order, he was injured, while he himself was exercising due care." This was too general. The court should have stated, as far as it was practicable to do so, the facts which, if proved, would make the order negligent ; and these facts must have been such as involved a failure to perform some duty which the defendant company owed to the plaintiff as its servant. One of the duties it owed him was that of exercising a reasonable care to avoid exposing him to " unreasonable risks or dangers." Another duty required the company to warn him of such dangers as he would be exposed to in obeying its orders, and of which it knew or had reason to know he was not apprised. (Wood's Master & Servant, secs. 348, 352; *S. W. Telephone Co.* v. *Woughter*, 56 Ark. 206 ; *St. Louis, etc., Co.* v. *Gaines*, 46 Ark. 555.) The terms of the fourth instruction would apply in a general sense as well to one of these duties as to the other ; but it defines neither of them, and therefore gives no test of the negligence on which the liability of the defendant depended. And, drawn as it was, it was liable to misconstruction by the jury, and was calculated to mislead them into treating as negligence the mere act of ordering the plaintiff "to a dangerous position," although the position may have exposed him to no unusual hazard, and its danger may have been one ordinarily incident to the service he had undertaken to render.

**3. Duty of master toward servant.** The fifth, sixth and ninth instructions all contain misleading clauses as to the experience or inexperience of the plaintiff as a workman. There was no evidence tending to prove that he was without experience as a bridge carpenter, and none to show that any special training or practice was necessary to enable him to do with safety to himself the act in the performance of which he was injured. And in this part of its charge we think the court could only have said with propriety

that, if the jury believed from the evidence that the plaintiff was suddenly called upon to perform an unaccustomed duty, when, by reason of the rapid approach of the engine, he had no time for preparation or reflection, it was proper to consider these circumstances in determining whether he exercised reasonable care. *Railway* v. *Higgins*, 53 Ark. 466.

The sixth instruction is objectionable on the additional ground that it seems to make the defendant liable for the foreman's failure to warn the plaintiff of the danger of holding the rope and block, without regard to whether the foreman knew, or ought to have known, that the plaintiff was not aware of the danger.

For the errors designated, the judgment is reversed, and the cause remanded for a new trial.