ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* COMPTON.

Opinion delivered October 7, 1918.

1. MASTER AND SERVANT—ASSUMED RISK—PATENT DANGER.—Where a defect is so patent and the danger so obvious that a servant of reasonable intelligence, exercising ordinary care for his own safety in the use of appliances furnished him, must have had knowledge of and appreciated the dangers incident to such work, he assumes the risk.

2. SAME—ASSUMED RISK—BOARDING MOVING MOTOR CAR.—Where an employee of a railroad company was injured by making a misstep in attempting to board a motor car, he will be held to have assumed the risk, since no person of ordinary prudence could have failed to appreciate the danger.

Appeal from Miller Circuit Court; *Geo. R. Haynie,* Judge; reversed.

*Daniel Upthegrove, J. R. Turney* and *Gaughan & Sifford,* for appellant.

The court erred in its instructions. No negligence was proven and plaintiff clearly assumed the risk. 90 Ark. 407; 108 *Id.* 483; 58 *Id.* 125; 89 *Id.* 50; 106 *Id.* 436; 76 *Id.* 441.

*Mehaffey, Keeney & Dalby* and *J. M. Carter,* for appellee.

Appellee was guilty of no negligence but appellant was. Appellee did not assume the risk. 182 S. W. 83; 129 *Id.* 88; 203 *Id.* 840; 232 U. S. 94; 182 S. W. 81.

SMITH, J. The appellee instituted this action against appellant for damages for personal injuries, and a judgment was rendered in his favor from which is this appeal. The facts are substantially as follows:

The appellee was a section hand in the employ of appellant. He was 57 years of age. On the 3rd day of

July, 1917, he was engaged in the work of repairing appellant's road bed. There were no others in the section gang at that time except another man and the section boss. The section gang were required to carry along a motor car which was operated by power generated by the explosion of gasoline. The motor car was rolled out and lifted on the railway track. Appellee and the other man started the car. The foreman told the appellee and his fellow servant to get on the other side of the car and start it. Appellee was on one side, and his fellow helper on the other. Appellee put his right side to the car, shoved it slowly and when the engine began to exhaust, he sprang on. In starting the car he went in a trot. They had made three or four stops, each time starting the car in the above manner. Appellee described the manner in which he received his injuries as follows: "I started to speed it up. There was a road crossing there. I crossed the cattle gap and was walking on the end of the ties pushing along, all the time running along with it. As quick as we left the cattle gap, I went to make a spring and noticed the exhaust was sufficient to run, and I did not catch it with my foot. I made the spring with my right foot and threw up my right foot to the edge of the car and it slipped off. I had to gather in close to the car on account of a plank coming down from the cattle gap and I did not get quite high enough. I was expecting my weight to come on it and it slipped off. My foot came down on the rail and the wheel ran across it."

Appellee was employed on the morning of the 2nd of July and was on the car operated by the section gang on that day. The car, on that day, was started a half dozen times. It was started the same way every time. There was nothing to keep appellee from looking at the men and from seeing how it was done. On the next day appellee helped to start the car. Appellee's foreman did not explain to him how to start the car except that he showed appellee where to set his foot. He did not explain to appellee that there was any danger in doing that. Appellee, when he applied for the job, told his foreman

that he was inexperienced. There were no running boards or steps on the sides of the car where a man could step on after the car was started. There was no self-starter on the motor. It was about 18 inches or 2 feet between the front wheels and hind wheels of the car. The car is just a plank table that goes out from the wheels for the men to ride on and to put a box of tools on.

The section foreman testified in regard to the injury and the appliance with which appellee was working as follows: ''The car is about three feet high, has four wheels with a small four horsepower engine on the center of the car which runs with a belt drive. The body of the car is almost square. The platform of the car does not extend out from the end of the ties. It extends about six inches from the rail. There was a seat about 16 inches above the car made of boards set upon legs. These planks were 10 inches wide and were for seats. The edge of this plank does not come out as far as the edge of the platform of the car. In stepping on the car you held to the car and stepped on the edge of the car. There is no difficulty in stepping on the car except it is a little high. When the car started that started the engine. These motor cars have been used on the Cotton Belt something like six or seven years. The body of the car is like the old section car that was operated by hand, except it uses a gasoline engine instead of levers. It is like the old car except the frame and handle is off; about the same height and width. The company furnished the car and I furnished the motor. I have seen similar cars on the other railroads that were operated in the same way. At the time Mr. Compton got hurt we had only two men that day; one man on each side. Compton was on the right hand side and he, being a new man, I told him to get on the car first, and I would start the engine, and I would start the car without him pushing it. He started to pushing, himself, and when he did start to step on the car, the car had started to move a little bit, and in stepping on it, being a little high, he put his foot on the car and started to put his left foot on the car and missed the car and his back foot got caught

but he took it off the rail." This witness further testified "that the car that injured appellee was a little too high for a man to step on it safely. There was no self-starter to the motor. It had to be moved along at a speed of about 3 or 4 miles an hour to start the motor, and a man would have to go in a little trot to explode it. Two men can start it. When the appellee was injured, the car was going at a speed of about three miles an hour. The car was a little higher than the smallest hand-car. It was not higher than one class of hand-cars. About half the hand-cars are made in the small size and about half in the large size. This car was the large size."

The other servant was a step-son of the appellee and he testified substantially corroborating the testimony of the appellee as to the manner of the injury, and he further stated "the section foreman told my father that morning how to get on and off the car. At the time he got hurt he did not tell him. That morning he showed him how to get on the car. He showed him at the section house, and he showed him just like I stated."

It was shown that there were five section hands working on the day before the injury to appellee.

The appellee alleged that the appellant was negligent in not having sufficient men in the gang to properly handle the car, and in not warning the appellee of the danger in starting and getting on the car, and in furnishing the appellee a car that was not equipped with a self-starter, and that had no steps or platform upon which the appellee could step safely from the ends of the ties to the top of the car. The appellant denied specifically the allegations of the complaint, and pleaded that the appellee assumed the risk, and that he was also guilty of contributory negligence. The majority having reached the conclusion that the cause must be reversed for another reason, it is unnecessary to determine whether the testimony was sufficient to sustain the verdict on the issues of negligence and contributory negligence; and it may be conceded for the purpose of this decision that the instructions on these issues were correct. Nevertheless, the appellee cannot

recover for the reason that he assumed the risk. The undisputed evidence shows that such danger as existed was an open and obvious one which a man of ordinary prudence must have understood and fully appreciated when he entered upon the performance of his duties. Appellee was 57 years of age. He had seen the car started in the same manner a half dozen times on the first day, and on the day that he was injured, appellee had speeded up the car four times or more before he was hurt. The section foreman had shown appellee where to set his foot. The whole operation of starting the car in the manner shown by the proof was so simple and obvious that appellee must be held to have had knowledge of whatever danger there was and to have appreciated such danger. Where the defect is so patent and the danger so obvious that a servant of reasonable intelligence, exercising ordinary care for his own safety in the use of the appliances furnished him, must have had knowledge of and appreciated the danger incident to his work, then he assumes the risk. Such was the case here and in such case the law charges the servant with knowledge of the defect and appreciation of the danger. *Fullerton* v. *Henry Wrape Co.,* 105 Ark. 437, and cases there cited; *Mo. & North Ark. Ry. Co.* v. *Murphy,* 106 Ark. 438; *Pekin Stave Co.* v. *Ramey,* 108 Ark. 490 and cases cited. These and other cases are collated in 3 Crawford's Digest, p. 3441, Sec. 99, *et seq.;* 2 Sec. 100.

Even though appellee's foreman was present directing the work, he had shown appellee how to do it, and it could only be done in one way. The height of the car was obvious, and the difficulty of reaching it and the danger from a misstep on the ties while attempting to board the car in motion was also obvious, and no man of ordinary intelligence and prudence could have failed to have known and appreciated such danger as existed. There was nothing peculiar in the circumstances to justify the appellee in relying upon the superior knowledge of his foreman as to the defects and dangers. In this respect the case in hand is distinguished on the facts from the cases of *Griffin*

v. *St. L. I. M. & S. Ry. Co.*, 121 Ark. 433; *Dickinson v. Mooneyham*, 203 S. W. 840, and *A. L. Clark Lbr. Co.* v. *Northcutt*, 95 Ark. 291 and other cases cited in appellant's brief.

For the error in not instructing the jury to return a verdict in favor of the appellant as requested by appellant's prayer No. 1, the judgment is reversed and the cause is dismissed.

WOOD, J., dissenting.

Appellee testified: "I discovered that I couldn't handle myself as good with my left side as I could with my right to the car. When we started I went around the car to change sides. Obie West asked me to change sides with him but the boss said, 'No, Mr. Compton, go back to that side. You don't understand handling that brake beam.' I never said a word; that was his orders. I started to speed it up. There was a road crossing there. I crossed the cattle gap and was walking on the end of the ties pushing along, all the time running along with it. As quick as we left the cattle gap, I went to make a spring, etc."

The testimony of this witness shows that he could not get on the car as well with his left side to it as he could with his right side, hence he was intending to change to the other side of the car when his foreman directed him not to do so. His testimony shows that the foreman was present directing the work. While the foreman had shown appellee how to board the car when it was in motion, he had not told appellee that the car was too high to be safe and expressly warned appellee of the danger because of such fact in attempting to get upon same while the car was in motion.

Under the circumstances thus disclosed by the evidence it was a question for the jury to say whether or not the appellee assumed the risk. This case cannot be distinguished in principle from the cases of *Dickinson* v. *Mooneyham*, — Ark. —, 203 S. W. 840; *A. L. Clark Lum-*

*ber Co.* v. *Northcutt,* 95 Ark. 291; *St. L. I. M. & S. Ry. Co.*
v. *Griffin,* 121 Ark. 433; *Ry. Co.* v. *Cosio,* 182 S. W. 83.

Under the doctrine of the above cases it was a question for the jury as to whether or not the appellee knew and appreciated the danger incident to boarding the car in the manner indicated. Therefore the court did not err in refusing to declare as a matter of law that the appellee assumed the risk. It occurs to us that the present case can not be distinguished from the doctrine of the above cases without too great refinement of reasoning. See also *Gila Valley, Globe & Northern Ry. Co. et al* v. *Hall,* 232 U. S. 94. In the latter case it is said: ''Moreover, in order to charge the employee with the assumption of risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew that it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it.'' Such being the law, it was for the jury to say under the circumstances in the instant case as to whether or not the appellee had the right to rely upon the superior knowledge of his foreman and whether or not appellee in so doing, as a person of ordinary care, would be bound to know and appreciate the danger incident to his work.

Mr. Justice HUMPHREYS concurs.