THE KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* BROCK.

4-4236

Opinion delivered November 23, 1936.

· *F. H. Moore, A. F. Smith* and *James B. McDonough*, for appellant.

*Shaver, Shaver & Williams* and *Sam T. & Tom Poe*, for appellee.

MEHAFFY, J. Appellee brought this suit in the Little River circuit court against the appellant, and alleged in his complaint that appellant maintained a bridge in Texas, Number C-479; that on November 6, 1934, appellee was in the employ of the appellant as a workman in a bridge crew that was engaged in repairing said bridge; it was alleged that both appellant and appellee were engaged in interstate commerce; the repairs on the bridge consisted of removing defective, worn and used stringers or supports, and replacing the same with new ones; the stringers were heavy and the bridge crew were provided with a mechanical device known as a crab. Appellee and other members of the bridge crew were engaged in moving one of the wooden stringers; the cable of the crab was attached to the center of the stringer; appellee was holding down the north end of the stringer with his left knee on a cap near the center and on the east side of the bridge; appellee's right leg was extended back of him; he was awaiting the placing of

the south end of the stringer on the cap south of him by another member of the crew; he was exercising due care for his own safety and performing the duties required of him by appellant when A. H. Lutz, an employee of appellant and another member of the bridge crew was turning down or over stringers on a cap of the bridge about 12 feet north of appellee; without appellee's knowledge A. H. Lutz carelessly and negligently turned down or over a stringer with a canthook, and carelessly and negligently permitted the stringer to strike appellee on the right leg between the knee and the ankle; Lutz carelessly and negligently failed to warn appellee that he was about or intended to turn down or over the stringer in the direction of appellee, when Lutz knew, or by the exercise of ordinary care could have known, that it would strike appellee's right leg. By reason of the carelessness and negligence of Lutz, appellee's right leg was broken above the ankle; the ankle bone was broken on a level with the ankle joint, and he alleges some other injuries to the leg, and that appellee has suffered and will suffer in the future great physical pain and mental anguish; he is seriously and permanently injured, and will be incapacitated in the future; he asked judgment for $25,000.

The appellant filed answer denying all acts of negligence alleged by appellee, and alleged that the bridge being repaired by appellee and others was a local bridge in the state of Texas, and that the court had no jurisdiction to hear the case. It denies that Lutz was guilty of any negligence, and alleges that the appellee placed himself in a dangerous position and that Lutz did not know that appellee was in a place of danger.

This suit was brought under the Federal Employers' Liability Act. It is not contended here that the Little River circuit court did not have jurisdiction, and it is not contended that appellant and appellee were not both engaged in interstate commerce.

The law under which this suit is brought provides that if injury results in whole or in part from the negligence of any of the officers, agents or employees of the carrier, that the carrier shall be liable in damages.

Ralph Goodman testified that in handling stringers, as they were on the bridge at the time appellee was injured, he would look to see if anybody was in the way, and if any one was in the way he would notify him. After turning the timber, this witness said they would look to see if everything was clear, and then they would land the timber.

The appellee testified that bridge C-479 is located south of Red River, one mile in Texas. Witness was called assistant foreman, but was required to make a hand like any one of the other gang. On the day he was injured the foreman was there, possibly 100 or 150 feet away; the stringers they were handling were eight inches thick, sixteen inches wide, and twenty-four feet long; five other men were working with appellee; he was injured during the day of November 6, 1934; the men were changing out the old timber and putting in the new on the east side; the stringer, when taken out, would be laid to one side and the old one taken out; would take out nine stringers and then put in nine; took out three stringers at a time by hand, one at a time; appellee had gone down there with Lutz and had taken out one stringer; the crab came up and anchored there; then picked it up; Lumis and Smith would pick the stringer up; witness would then set the stringer out on the end of the cap; witness was between the guard rail and the edge of the cap with his left hand on the stringer; his left leg was three or four feet from the stringer; Clowdis, another of the crew; was on this end of the stringer, and was there to swing the stringer out; the stringer was back of witness, north; Lutz had helped move this stringer out; Lutz turned the stringer down like that; witness did not know that Lutz was going to turn the stringer down; did not see Lutz and Lutz did not warn the witness; the stringer weighs approximately 1,000 pounds; Lutz had worked there for six years; his superiors had told them all not to throw these down towards an employee; this rule had been enforced since he worked there; the stringer when flattened, struck witness above the ankle; there was nothing in Lutz's way to keep him from seeing witness if he had looked; he was doing the

work in the customary way and in the manner instructed, and had been all the time; witness had his hands full in helping to move the stringer; had both hands and his knee on the stringer, looking south; Lutz was there ahead of witness, north; the foreman was only 150 feet away, and witness was not required to look after the men; Lutz was 12 feet from the witness at the time of the injury; Lutz and witness had worked together for six or seven years; witness testified that he did not figure that Lutz would flatten the stringer, never thought about it, and he had never had one flattened without warning; witness had been at work for the Kansas City Southern Railway Company a little over 13 years; he had not instructed Lutz to turn over the stringer; it was necessary for witness to be where he was; when witness was asked if he was in charge of the work he said he was not; the foreman was on the dump coming onto the bridge; a passenger train had just gone by and the foreman and crew had gone out on the dump and left the foreman on the south end of the bridge; the crew knew when witness went out after the train had passed just what was to be done; it was the custom to flat down one stringer at a time; there was nobody on the north stringer except Lutz; did not know that Lutz was going to turn the stringer over; he was asked if it was not the custom for the assistant foreman to instruct the men in detail in this case, and he said he did not think so; he heard no warning or anything to indicate that Lutz was going to turn over the helper; witness said it was necessary for him to be in the position he was in at the time of the accident, and that he could not have gotten into a safer position.

Lutz testified that he had been performing the duty of flattening the stringers down three or four years; he said there was nothing between him and Brock that would have kept him from seeing him, and when asked why he did not look he said the other men should have looked; witness was asked if it was not his duty in turning down heavy stringer that he should look and see the man in the direction he was about to turn and warn him he was about to turn the stringer, and the witness said:

"Yes, sir, if in charge." This witness was asked if the first safety rule did not require men turning down timbers to look before he turned it down and he said, yes, if he is the man in charge.

Lumis testified that there was nothing to prevent Lutz from seeing Brock; he said it was the duty of all of them to be careful; when asked about the danger he answered that if he was in Lutz' place, before he would turn down, he would look and see if anybody was in the way; he said if some one was in the way, under the rule, witness would be required to warn them before he turned it down, and would be required to hold the stringer until the danger got out.

The rules of the company with reference to safety were introduced. There was ample evidence to submit the case to the jury. The evidence shows that when any one undertook to flatten or turn down one of these stringers, it was his duty before doing so to warn persons that were in the way, and if any one was in the way to wait until they reached a safe place. Lutz, himself, a witness for the appellant, testified that if he was in charge it was his duty to warn any one in danger or that might be hurt. In charge of what? There was nothing to do but to turn down the stringer, and Lutz was in charge of that. The undisputed evidence shows that was his duty. Besides that, the evidence shows it was the custom to warn; but if it were not, it would be a violation of duty for any one to turn down a stringer like that without taking the precaution necessary to find out if anybody was in danger. Lutz turned this stringer down without looking to see whether anybody was in danger or not.

It is contended, however, that the appellee was assistant foreman and that it was his duty to give directions and to look out for himself, as well as the rest of the crew. The foreman and members of the crew who were working on the bridge got off of the bridge onto the dump for a passenger train to pass over the bridge. It appears from the evidence that immediately after the train passed, the crew went back to the work and the foreman was about 100 or 150 feet away on the dump, and had not returned to the bridge where the others were

at work. The undisputed proof shows that the appellee was working just as the other members of the crew were, and there was no occasion at that time to give any orders.

"It has been decided that a foreman, under whom workmen are employed, is a fellow-servant with the workmen when engaged in accomplishing with them the common task or object; but when discharging or assuming to discharge the duties toward the workmen which the law imposes on the principal, he is a vice-principal." *Texarkana Telephone Company* v. *Pemberton,* 86 Ark. 329, 111 S. W. 257.

Here each man had his work, knew what he was to do, and no orders were necessary, and the foreman was only a short distance away. But if it had been Brock's duty to give an order, it certainly would have been Lutz' duty to wait until he received the order before turning the stringer.

It is next contended that Brock's violation of the safety rules denies him a recovery. There is no evidence that the appellee violated any safety rules. It is contended, however, that Lutz was under no legal obligation to look out for Brock, and for that reason a directed verdict should have been given. We do not agree with learned counsel in this contention.

Appellant says that the leading case on this subject is *Aerkfetz* v. *Humphreys,* 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758. In that case, in discussing the question of the liability of the receiver of a railroad company for injury to a track repairer in the station yard when he was injured by a locomotive, the court said:

"For a quarter of a mile east of him there was no obstruction, and by ordinary attention he could have observed the approaching cars. He knew that the switch engine was busy moving cars and making up trains, and that any minute cars were likely to be moved along the track upon which he was working. * * * There could have been no thought or expectation on the part of the engineer or of any other employee that he, thus at work in a place of danger, would pay no attention to his own safety." The court further said: "If negligence could

be imputed to them, surely the plaintiff, by his negligent inattention, contributed directly to the injury.'' In that case contributory negligence was a bar to recovery. Moreover, in station yards persons repairing tracks know that the engines are switching cars constantly, and are required under the rules of the company to look out for themselves and keep out of the way of engines which they know will come on the tracks.

Numerous other cases are cited and relied on by appellant. It would unduly extend this opinion to discuss all of them, but many of them are cases like the one just referred to.

Appellant next contends that Brock's negligence was the proximate cause of the injury. He calls attention first to *Ward Ice Company* v. *Bowers,* 190 Ark. 587, 80 S. W. (2d) 641. In that case the court said, speaking of the injured servant: ''He had seen the scoring machine in operation several times before the day of his injury. He knew how it worked. He could see every part of it. He knew the saws were back in the framework at least a foot from the front where ice was inserted. We fail to see how the Ward Ice Company could have so instructed him or cautioned him as to have prevented this injury.''

In the instant case, however, Lutz could and should have warned the appellee when he undertook to turn the stringer. In other words he should have seen that nobody was where he would get hurt if he turned the stringer.

Appellant then calls attention to *Trinity Farm Const. Co.* v. *Brannam,* 190 Ark. 1032, 82 S. W. (2d) 523. In that case the evidence shows that the injured party was driving a truck that he knew was defective on a foggy night; was driving at an excessive rate of speed onto a known curve, and was injured.

Appellant calls attention to several other cases which we do not discuss because we think they have no application to the facts in this case.

The appellee did not assume the risk of the negligence of Lutz. We have already shown that the evidence was sufficient for the jury to find that Lutz was negli-

gent, and if he was negligent this was a risk that appellee did not assume.

It is alleged in the complaint that Lutz, when he turned down the stringer, carelessly and negligently failed to warn appellee that he was about to do so. It was proper to permit evidence of a custom to give warning before turning down the stringer. It was proper to prove any fact or custom that tended to show that a warning should have been given, or that it was negligence not to give such warning.

Appellant contends that the court erred in giving the first instruction requested by appellee. The objections made in the court below were first, a general objection which stated that the instruction did not properly declare the law. His first specific objection was that the instruction was erroneous by reason of the use of the following language: "and that A. H. Lutz, a fellow-servant of the plaintiff, Brock, in turning a stringer down or over, negligently failed to warn plaintiff Brock that he was about or intended to turn the stringer down or over."

The instruction did not assume that Lutz was negligent, but it stated to the jury that if they found from a preponderance of the evidence under the instructions of the court that Lutz, in turning a stringer down or over, negligently failed to warn plaintiff, etc. It did not assume that he failed to do it, but told them if they found from the evidence that he negligently failed to warn plaintiff, and that while plaintiff was in the exercise of ordinary care for his own safety and if they found that the negligence of Lutz, if any, was the proximate cause of the injury, then their verdict might be for the plaintiff unless he assumed the risk.

Appellant next objects to instruction No. 2 which reads as follows: " 'Negligence,' as it is used in the instructions in this case, means the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done."

The specific objection to this instruction is that it is not a proper definition of negligence, and that the defendant is entitled to a directed verdict. It was not pointed out in what way it was improper, and no suggestion is made as to what would have been a proper definition of negligence. It is argued also that it assumes negligence. We do not think there is any merit in this objection.

Appellant also objects to the fourth, fifth and sixth instructions. We have not set out the instructions because they are somewhat lengthy. The court gave eleven instructions at the request of the appellee and eighteen at the request of appellant. It would serve no useful purpose to set them out at length, but we have examined them all carefully and have reached the conclusion that the court fully and fairly instructed the jury.

Our conclusion is that there was ample evidence to support the verdict and that the jury was properly instructed. The jury returned a verdict for $18,000 and judgment was entered accordingly, and this appeal is prosecuted to reverse that judgment.

This suit is brought under the Federal Employers' Liability Act, and since this act does not define negligence, the question of whether the act complained of amounts to negligence, is to be determined according to the common law and according to the rule prevailing in the federal courts as to what constituted negligence under the common law.

It is contended that the verdict is excessive. The appellee was 50 years old, was seriously injured, and his injury is such as to disable him from doing the kind of labor he has always done. Besides that, the evidence shows that his suffering was very great, and when the evidence is all considered, we do not believe the judgment is excessive.

We find no error, and the judgment of the circuit court is affirmed.