ARKADELPHIA LUMBER COMPANY *v.* HENDERSON.

Opinion delivered November 18, 1907.

1. MASTER AND SERVANT—DUTY TO GIVE WARNING.—A master employing an inexperienced infant to work about a machine will be liable for a failure to warn him as to a defect in the machine or as to dangers connected with the operation thereof. (Page 387.)

2. SAME—NECESSITY OF GIVING WARNING.—Where a servant, by, reason of his youth and inexperience, does not appreciate the danger incident to the service he is employed to do, it is the duty of the master to give him such instructions and caution as would, in `the judgment of men of ordinary prudence, be sufficient to enable him to appreciate the danger and to do the work safely, as far as it can be done with proper care on his part. (Page 388.)

3. USAGE—WHEN BINDING.—Where it was the practice for the tailer at a stave bolting machine to act as feeder during the temporary absence of the feeder, which usage was known to the foreman having supervision over both such employees, the master cannot escape liability for injuries sustained by the tailer while working in the feeder's place upon the ground that the tailer was not employed to work as feeder. (Page 388.)

4. SAME.—The element of antiquity need not be shown in order to establish a particular usage or custom of trade; all that is required being that it should have existed a sufficient length of time to have become generally known, or that it should be actually known to the party to be affected by it. (Page 389.)

5. SAME—PLEADING.—Where a complaint alleged that plaintiff was employed by defendant to work at and about a stave bolting machine, and was injured while feeding the machine by defendant's negligence in using defective machinery and in failing to instruct him as to the dangerous character of the machine, and defendant answered that plaintiff was not employed to feed the machine, but as a tailer, which position would not have brought him into contact with the machine, and that he took the feeder's place without authority, it was proper to permit plaintiff to prove that it was usual for the tailer to take the feeder's place when the latter was temporarily absent, although such usage was not pleaded. (Page 389.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; affirmed.

STATEMENT BY THE COURT.

M. M. Henderson, as next friend of John Henderson, a minor, sued the Arkadelphia Lumber Company for damages on account of personal injuries sustained by him while in the employ of said Lumber Company. He alleged that he was working in the mill of the Lumber Company about its stave bolting machine, a "dangerous and deceptive machine," which was so adjusted that only a small portion of the saws therein were visible to the operator; that the chains which were carried to said saws were defective in that they were continually coming apart or unlinked, thereby necessitating the operator mending the same by reaching his hand under said machine where said saws were concealed to link the chain together. That John Henderson was ordered to work about said machine, and while feeding it one of the chains became unlinked, and in the necessary discharge of his duty he had to reach under the machine to fix the chain in order to keep it in operation; that in so doing his hand came in contact with the saws, causing the loss of his thumb and a portion of his left hand. It was further alleged that said John Henderson was inexperienced in work about machinery, and that the defendant was negligent in ordering him to work about dangerous machinery without notifying and warning him of the latent dangers of said machine, and negligent in operating said machine with defective chains.

The Lumber Company denied all the material acts of negligence alleged in the complaint, and alleged that the said John Henderson was employed to tail the bolting machine; that his duty was to pass the pieces which make staves to the stave machine as they came from the bolter, which position was not dangerous, and did not bring him in contact with the saws of any dangerous machine. It denied that he was ordered to work in the position he occupied when he was injured, and denied that it was any part of his assigned duty to feed said machine with bolts. It alleged that, while he was engaged in tailing the bolting machine, one Chivis Hand, who was employed to feed the bolter, was required to be absent, and on leaving requested Henderson to take his place until his return; that during the absence of Hand the chain became unlinked without fault or negligence

of the defendant, and that in an improper attempt to repair it Henderson was injured. That he was not employed to do this work, and that it was not known to the company that he was at work in that place until after the injury.

There was testimony on behalf of the plaintiff tending to prove that he was seventeen years old at the time he was injured, and that he was first employed, for about a week, in the yard picking up sticks, and was then employed to tail the bolter, in which capacity he had been working for about a week when he was injured. The bolter was a machine arranged upon a table about three or four feet high, containing three circular saws; and two link chains carried the bolts through. The saws revolved on one shaft. Part of the table was boxed up, and about one-third of the saws were visible above the table, and it was dark under the table. The chain usually came unlinked two or three times a day, and it was the duty and habit of the feeder to link it together in order to continue the machine in operation. In doing this his hand was brought in close proximity to the saws revolving under the table. There was a usage in the operation of this machine that when the feeder was absent therefrom either the foreman in charge of the mill or the tailer took his place and fed the machine. The foreman, Duvall, at times served as feeder; and he was present at other times when the tailer was called upon to act in that capacity, and was present at least once when John Henderson was so acting. During the week that he had been at work as tailer, he had been called upon two or three times to act in the position of feeder. He was not warned nor advised nor instructed as to the operation of said machine nor the danger of connecting the links of the chain; and his testimony indicates that he did not understand or appreciate the danger thereof. While engaged in feeding the machine, a link came unfastened, and in the attempt to fasten it Henderson lost his thumb and a part of a finger.

The Lumber Company adduced evidence tending to prove that the danger in linking said chain together was obvious and patent to any one of ordinary intelligence and understanding, and that an injury resulting from linking it together would be due to negligence on the part of the person attempting to do

so; that Henderson was employed as tailer, and it was not a part of his duty to serve as feeder; that as tailer he was not brought into contact with dangerous machinery, and that he was warned of such dangers as were attendant upon the service for which he was employed; and that it was not known to the foreman, or any one else in charge, that he was serving as feeder of the bolting machine, until after he was injured; and that it was a voluntary assumption of service for him to serve at the bolter, and due to the request of his fellow servant, Chivis Hand, calling him to that position.

The court gave instructions as requested by each side, fully and fairly presenting the different phases of all the issues. It is only necessary to set out the sixth and seventh instructions, which are as follows:

"6. You are instructed that if you believe from the evidence that it had been the usage and custom of the defendant to allow or permit the persons feeding its machine to call a co-laborer who tails the machine to take his place and discharge his duties as feeder during his temporary absence, and that it had been the habit or usage of the one feeding the machine to re-link or repair the chain of said machine while in operation, and that defendant knew of such customs, usages or habits, and acquiesced in them, then the acts, custom or usage of the feeder of such machine in these respects would be deemed in law the usage or custom of the master, and the doctrine of fellow servant will not apply in this case.

"7. You are instructed that if you find from the evidence that the plaintiff, John Henderson, in taking the place of Chivis Hand, while absent temporarily, in feeding the bolting machine, was following the general habit, mode or course of procedure in vogue at the time at the defendant's stave mill, and that in doing so the said John Henderson honestly believed that he was performing his duty, or within the scope of his duty and employment; and furthermore that the said bolting machine was a dangerous machine, and that John Henderson had not been instructed as to its danger or how to perform said work with reference thereto, and by reason of his youth and inexperience he was injured, then it will be your duty to find for the plaintiff."

The court refused to give the following instructions on behalf of the Lumber Company: "The jury are instructed that the plaintiff in this action has not alleged in his complaint a special custom or usage current in the defendant's stave bolting mill, to the effect that when the feeder of said machine temporarily absents himself from said machine the boy employed to tail said machine should take his place. The court tells the jury that, in the absence of such allegation, proof of such custom or usage cannot be considered by the jury. Therefore all such proof is now withdrawn from the consideration of the jury."

The jury found a verdict for $1,000 for the plaintiff, and from the judgment entered thereon the Lumber Company has appealed. All exceptions were properly preserved and brought forward in the motion for new trial.

*John H. Crawford,* for appellant.

1. Under the allegations of the complaint and the proof, the court should have given a peremptory instruction for the appellant. There is no evidence that the chains were defective or that the machine was any more dangerous and deceptive than any other machine of the same kind, and there was no latent danger. In this case the servant knew the danger, which was patent, and was of sufficient age and intelligence to appreciate it. 57 Ark. 76. The negligence, if any, was that of a fellow servant. 58 Ark. 318; 46 Ark. 555. See also 39 Ark. 19.

2. The sixth and seventh instructions were erroneous. No usage and custom was pleaded. No evidence that the master had notice of the youth's inexperience. 78 Ark. 147; 80 Ark. 68.

*John E. Bradley,* for appellee.

1. The question of negligence, in so far as pertains to the chains in use, is settled by the jury's verdict, and there is neither allegation nor contention that the machine was any more dangerous or deceptive than others of its kind.

It is elementary that a master who employs a minor to work about dangerous machinery must give him proper instruction as to the nature and scope of his work and the dangers inci-

dent thereto; and such instruction must be such as to enable one of the youth and inexperience of the minor employed to appreciate the nature of the danger. 93 Mich. 172; 105 N. Y. 26; 48 La. An. 483; 102 Mass. 572; 60 Mich. 501; 16 Utah, 392; 1 Ind. App. 188; 165 Mass. 487; 73 Ark. 49; 58 Ark. 168; 71 Ark. 55. The servant assumes only such risks, incident to the employment, as are known to him. 77 Ark. 367.

2. Where the negligence of the master contributes to the injury, the master is liable, even though negligence of a fellow servant also contributes to the injury. 106 U. S. 700; 34 Am. St. Rep. 275; 72 Cal. 38; 86 Tex. 81; 62 Tex. 227; 58 Tex. 276; 4 L. R. A. (N. S.) 515; 2 *Id.* 647; 90 Va. 665; 65 Vt. 553; 127 Ind. 50  118 Ind. 579; 73 N. Y. 38.

3. Evidence of the custom and usage was competent and relevant, under the allegations of the answer setting up new matter, which, under the Code, are taken as denied without the filing of a reply. It was competent to show how the custom was understood and acted upon by the parties. 7 Am. & Eng. Enc. of L. (1 Ed.), 50; 77 Ark. 405; 2 Greenleaf, Ev. (13 Ed.), § 251; 69 Ark. 313.

HILL, C. J., (after stating the facts.)  1. The first contention is that the court erred in not giving the 7th instruction asked by the Lumber Company, which was a peremptory instruction to find for the defendant. The evidence adduced on behalf of the plaintiff showed that the injury was due to either a defect in the machine or to Henderson's failure to properly connect the disconnected chain to continue the machine in operation; and in either event the Lumber Company would be liable if it failed to warn him of a defect in the machine or as to the dangers connected with the operation thereof. What was said in *Bodcaw Lumber Co. v. Ford,* 82 Ark. 555, is equally applicable to the plaintiff's evidence here: "Being an inexperienced youth, uninformed as to the proper method of operating the machine, he was entitled to instruction as to the safe method of operating it and warning of the danger ordinarily incident to the work or by reason of any defect in the machine. The jury were therefore warranted in finding that, under the circumstances, it was the duty of the defendant either to instruct him or to

warn him not to attempt to feed the machine, and that it did neither of these things, but sent him to work there without proper warning or instructions."

2. It is wholly immaterial whether the danger was patent or latent. In *Ford* v. *Bodcaw Lumber Co.,* 73 Ark. 49, the court said: "If the danger of the employment is patent, and the servant, by reason of his youth and inexperience, does not know or appreciate the danger incident to the service he is employed to do, it would be the duty of the master to warn him of it and instruct him to avoid it, so far as it can be, before exposing him to it. (Citing authorities.) In all cases where there is a duty to warn a servant, it would be a breach of such duty to expose him to such dangers without giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the dangers and the necessity for the exercise of due care and precaution, and to do the work safely, so far as it can be done with the proper care on his part. For a breach of this duty the master is liable for the damages resulting therefrom. (Citing authorities.) Of course, there is no duty to instruct when the master does not and ought not to know or take notice of the youth or inexperience of the servant."

It was said in *Davis* v. *Railway,* 53 Ark. 117: "A knowledge of facts which involve a latent danger does not imply a knowledge of the danger itself."

These principles were applied in *King-Ryder Lumber Co.* v. *Cochran,* 71 Ark. 56, where a youth of eighteen years, of fair and ordinary intelligence but inexperienced in his work, was put to work operating an edger in a saw mill, and was injured thereby, and are equally applicable to the, case at bar.

3. It is insisted that Henderson was not employed to work about the dangerous machine, as he was employed as a tailer and not as a feeder; and, had he continued to work in the capacity in which he was employed, the injury would not have occurred; and that the master is not liable for his undertaking to do this work at the instance of the feeder, who, it is contended, was a fellow servant. The plaintiff has evidence showing that it was customary for the tailer or foreman to take the place of the feeder when the feeder was temporarily absent from

his machine; and, further, that ·Henderson as tailer was called upon to attend to the machine pursuant to this custom, and this was done once in the presence of Duvall, the foreman. If this evidence be true, then his employment as tailer included the employment as feeder during the temporary absences of the feeder from the machine. Duvall denies seeing Henderson at work feeding the bolting machine; but he does not deny knowledge of the custom of the tailer being called to take the feeder's place. This matter was sent to the jury in the 6th and 7th instructions, and there is testimony to sustain the verdict upholding the theory of plaintiff therein outlined.

4. It is said that the evidence falls short of establishing such custom or usage as would make it binding upon the parties. The principle governing particular customs or trade usages is as follows: "The elements of antiquity need not be shown in the case of a usage or custom of trades. All that is required is to show that it is established, that is, that it has existed a sufficient length of time to have become generally known." "Particular usages and customs of trade or business must be known by the party to be affected by them, or they will not be binding, unless they are so notorious, universal and well established that his knowledge of them will be conclusively presumed." 12 Cyc. 1034, 1041; *Ward Furniture Mfg. Co.* v. *Isbell,* 81 Ark. 549; *Bodcaw Lumber Co.* v. *Ford,* 82 Ark. 555; *McCarthy* v. *Mc-Arthur,* 69 Ark. 313.

These principles were reflected in the sixth and seventh instructions, and the testimony is sufficient to sustain a verdict finding such custom.

5. It is urged that the custom should not have been introduced into evidence without being pleaded, and the sixth refused instruction presented appellant's contention in that regard. ·The court refused it, and such refusal is alleged to be error.

The complaint alleged that Henderson was in the employ of defendant, and ordered ·and directed to work at and about the bolting machine, and was injured while feeding said machine; and charged negligence in the use of defective machinery and in want of instruction. The answer denied the negligence alleged and set forth that Henderson was not employed as a feeder but as a tailer, which position would not have

brought him in contact with the machine, and that he took the feeder's place without authority from the company. The Code provides that the answer may controvert any allegation of the complaint and set forth any new matter constituting a defense. This new matter is not to be answered unless it constitutes a counterclaim or setoff, when there shall be a reply thereto. All other defensive matter is considered controverted. Kirby's Digest, § § 6098, 6108, 6137.

The custom came properly into the case to meet the defensive matter alleged in the answer, which stood controverted by law, and an issue of fact thereby raised to be settled by the jury, upon evidence to be adduced sustaining or refuting the allegation. Finding no error in the case, the judgment is affirmed.