### FURLOW *v.* UNITED OIL MILLS.

### Opinion delivered July 1, 1912.

1.  WITNESSES—IMPEACHMENT.—When a witness is cross examined on a matter collateral to the issues in the case, his answer can not be contradicted by the party putting the question.  (Page 494.)

2.  INSTRUCTIONS—REPETITION.—It is bad practice to repeat instructions, as such repetition lays undue stress upon the matters therein embraced.  (Page 495.)

3.  MASTER AND SERVANT—INSTRUCTIONS AS TO NEGLIGENCE.—In an action for negligently causing the death of a servant, where it was claimed that the master was negligent (1) in failing to guard certain cogs and (2) in failing to furnish a safe platform for the servant, instructions as to the master's duty to exercise ordinary care to furnish the servant a reasonably safe place to work in, and to furnish such appliances as were in common and ordinary use in the business and were equipped in the ordinary way, covered both the duty to guard the machinery and to furnish a safe platform, so that it was not error to refuse additional instructions on such issues.  (Page 495.)

4.  SAME—ASSUMED RISK.—Where a servant is working overtime in the line of his employment, he assumes the risk the same as if the work was being done during the regular hours.  (Page 496.)

5.  SAME—ASSUMED RISK.—One who enters another's service assumes the ordinary risks of the employment; and while the master is under an implied obligation to furnish him with a reasonably safe place in which to work and with reasonably safe tools, the servant may dispense with this obligation by knowingly assenting to occupy a dangerous place.  (Page 498.)

6. SAME—ASSUMED RISKS—MINORS.—A minor servant assumes the ordinary risks of his employment, so far as those risks are, or ought to be, known to him, either from his own experience or from instructions received from the master. (Page 499.)

Appeal from Little River Circuit Court; *Jeptha H. Evans,* Judge, on exchange; affirmed.

*Seth C. Reynolds* and *W. P. Feazel,* for appellant.

1.   The day and night superintendents of appellee having both testified that they had warned decedent of the dangers incident to his employment and instructed him how to avoid them, and having further testified that they warned and instructed their other minor employees, appellant ought to have been permitted, when he offered to do so, to introduce testimony of other minor employees to rebut the same. 48 Ark. 460. If the presumption reasonably flows from the fact of failure to warn other minor employees that they did not warn the deceased, the testimony is competent and admissible. 8 Enc. of Ev. 926; 11 *Id.* 775, note; 27 Pac. 199; 34 Pac. 216. It is admissible under the doctrine of probabilities. 11 Enc. of Ev. 777, note 7; 58 Ark. 468; 48 Ark. 182. See note 34, 11 Enc. of Ev. 787. It was admissible for the purpose of contradicting the two superintendents. 79 Am. St. 826.

2.   The effect of the court's amendment of appellant's requested first instruction so as to substitute "and" for "or" between the words "minor" and "inexperienced" was to charge the jury that no warning and instructions were necessary unless the decedent was both a minor and inexperienced, whereas such necessity exists where the employee is either a minor or inexperienced. 90 Ark. 411.

3.   If decedent was mentally and physically unfit to do the work assigned to him, because of long service without rest or sleep, and was himself not aware of his unfitness and did not know or appreciate the danger, and if the defendant or its foreman, knowing his unfit condition, ordered him to do the work, then it is liable for the resultant injury, and the court erred in refusing appellant's second requested instruction. 91 Ark. 103.

4.   The court's instructions on the question of assumed

risk define the law of assumed risk as applied to adult persons rather than to minors. In the case of a minor the burden rests upon the employer to show that the servant comprehended the particular risk; and the question whether he understood and appreciated the danger is for the jury to determine from all the facts and circumstances in evidence. 90 Ark. 407; *Id.* 481. Knowledge of the danger was itself a question of fact for the jury. 53 Ark. 117; 92 Ark. 109. And knowledge of the defect does not imply appreciation of the danger. White's Sup. 4658. See, also, 141 S. W. (Ark.) 1177.

5. A minor is only held to that degree of care and caution which minors of his age, experience and intelligence are presumed to be capable of exercising. 81 Ark. 187; 88 Ark. 181 90 Ark. 145; 81 Ark. 595.

*T. D. Wynne, A. D. DuLaney, J. S. Lake, J. S. Steel* and *James D. Head,* for appellee.

1. The question whether warning and instructions were given to other minor employees of appellant was foreign to the issues in this case, incompetent, and hence inadmissible. 58 Ark. 129; 90 Ark. 206-209. It was not admissible for any purpose. 89 Ark. 530; 76 Ark. 302; 52 Ark. 308; 59 Ark. 531; 72 Ark. 409; 93 Ark. 313.

2. Appellant's first request was properly refused. When the master has provided a reasonably safe place in which, and reasonably safe instrumentalities with which, to do the work, he has performed his full duty in this respect; and if the servant, contrary to instructions, uses an instrumentality for one purpose which is constructed and intended for another purpose, the master would not be guilty of negligence if the instrumentality was suitable for the purpose intended.

Since the instrumentality employed in this case is shown to have been intended for another purpose than that for which it was used, before negligence can be predicated thereon, it must be shown that the company invited its use by the oilers, or that such use had been so long continued as to charge appellee with notice. 1 Labatt, Master and Servant, § 26; *Id.*, § 28; *Id.* 881, § 342; 2 Bailey, Pers. Injuries, 1398, § 474; 122 Mich. 630, 80 N. W. 554; 77 Ark. 405; 48 Ark. 333.

3.  Appellant's second and fourth requests assume that appellee exposed deceased to unnecessary danger, and were properly refused.

Negligence may not be predicated upon an order exposing one to normal dangers.  91 Ark. 103; 4 Am. Rep. 364; 1 Labatt, 1247, § 440c; 77 Ark. 367; The mere fact that deceased was working overtime will not absolve him from the assumption of risk.  2 Bailey, 968, § 362; 52 N. W. 740.

4.  There is no negligence on the part of appellee shown, and it was entitled to a peremptory  instruction.  If anything at .all should have been submitted, it was the two propositions, first whether or not deceased was so young and inexperienced that the appellee, in the use of ordinary care, should have given him instructions or warning, and, second, were proper instructions or warnings given him.  53 Ark. 117; 97 Ark. 180; 82 Ark. 11.

5.  The court's instructions on the question of assumed risk are in keeping with principles announced and approved by this court.  97 Ark. 180.  See also 48 Ark. 333, 337; 41 Ark. 452; 82 Ark. 11; 5 Thompson on Neg., § 5330; 60 Ark. 438; 65 Ark. 98; 77 Ark. 367; *Id*. 458-463; 67 Ark. 209-218; 53 Ark. 458; 71 Ark. 55.

6.  A minor can assume risk as well as an adult.  If he is experienced in his work, he undoubtedly does assume the risk, and in such case the mere fact of minority would not aid in a recovery. 2 Bailey, 954, § 358; 1 Labatt, § § 19, 20; *Id*. 1076, § 309.

FRAUENTHAL, J.  This is an action instituted by the administrator of George Furlow to recover damages for the pain and suffering he endured resulting from an injury which he sustained while in the defendant's service.  The defendant is a domestic corporation, owning and operating an oil mill at Ashdown, and Furlow was employed by it in the capacity of oiler of the machinery at this mill. While in the discharge of his duties, his left forearm was caught and crushed in some cogs, and from the injury thus received he died about six days later.  In the defendant's mill there were two sets of line shafts, which met at right angles, and were secured to a frame about eight or ten feet above the floor. At the junction of these line shafts there were two sets of cogs, forming what

is called a "right-angle drive," or miter gearing. On the line shafts there were several oil boxes or vats which required to be oiled. About twenty-six inches distant from the cogs there was what is called a "condenser," which is a box with a flat top, about eighteen inches below the level of one of these line shafts. Between the line shaft and the condenser, and about three feet below it, was a plank about one foot wide, running parallel with the line shaft. The plank was nearest the line shaft, and at one end the cogs reached somewhat over its edge. The testimony on the part of the defendant tended to prove that these boxes or vats on the line shafts were oiled by the employee while standing upon the condenser, and that the plank had been placed and was only for the purpose of standing thereon while cleaning and repairing the machinery when the mill was not running. The testimony on the part of the plaintiff tended, however, to prove that other employees engaged in oiling this machinery stood on the plank while performing this duty, and that Furlow received his injury while standing on this plank and oiling the gearing at these cogs. It is claimed by counsel for plaintiff that the plank was so narrow that it caused one to press against the cogs, which were left unguarded and uncovered, on account of which Furlow's arm was caught and crushed by the cogs.

The injury occurred on February 2, 1911, about noon, and Furlow would have been twenty-one years old the following November. He had been in the defendant's employment at this mill for about four seasons, in various capacities which brought him in proximity with this machinery, and he had worked as oiler for 143½ days or nights just prior to the injury. He was of the average intelligence of a young man of his age, and the testimony on the part of the defendant tended to prove that he had good ability and had acquired considerable experience in the work in which he was engaged. The testimony of the defendant's night and day superintendents also showed that they had, at the time he entered this employment, properly instructed and warned Furlow relative to his duties and the dangers connected therewith; and this testimony is uncontradicted.

There was also testimony tending to prove that the cogs were installed and operated in the manner usually employed

by ordinarily prudent and careful oil mill men engaged in like business.

The deceased had worked the night of January 31, and until the morning of Feburary 1. He again went to work at noon on Feburary 1, and worked until noon of Feburary 2, when the injury occurred. There is a conflict in the testimony as to whether the deceased went to work on February 1 at the request of defendant's superintendent or upon his own motion and over the superintendent's protest. The superintendent testified that Furlow requested that he might work during that half-day, because the mill would shut down during the following night, and he desired to earn all that he could; that he objected to his working through the day, but that Furlow insisted on doing so. On the part of the plaintiff, however, the testimony tended to show that the superintendent requested Furlow to work during this half-day because the day oiler was at that time sick.

The trial resulted in a verdict for the defendant. The plaintiff seeks by this appeal a reversal of the judgment upon the ground that the court erred in refusing to admit certain testimony offered by him, and its rulings upon instructions given and refused.

Upon the trial of the case, both the night and day superintendents of the company testified on their direct examination that they had properly instructed and warned Furlow of his duties and the dangers connected therewith. Upon the cross examination of these witnesses, counsel for plaintiff asked them whether they had instructed and warned other employees of the defendant doing like duties and who had not reached their majority. Subsequently, the plaintiff introduced several minors, who were in defendant's employ doing like duties, and by them offered to prove that neither of these superintendents had instructed or warned them. The court refused to admit this offered testimony. In this ruling we think the court committed no error. The two superintendents had not on their direct examination testified relative to warning or instructing any employee other than Furlow. It was a matter wholly immaterial to the issues involved in this case whether the superintendents had or had not given instructions and warnings to other employees. Such testi-

mony was not connected with the issues involved in this case, and related to matters wholly collateral to those issues. The general rule, well established and repeatedly approved by this court, is that when a witness is cross examined on a matter collateral to the issues in the case, his answer can not be subsequently contradicted by the party putting the question, nor can the witness be impeached by showing the falsity of his answer made on cross examination relative to collateral matters. The witness can only be impeached by evidence that his general reputation for truth or morality renders him unworthy of belief, or that he has made statements different from his testimony given in chief in the case, or relative to some matter which is not collateral to the issues involved therein. *Peters* v. *State*, 146 S. W. 491; *Jones* v. *Malvern Lumber Co.*, 58 Ark. 129; *Hot Springs Ry. Co.* v. *Bodeman*, 76 Ark. 302; *Abbott* v. *Herron*, 90 Ark. 206.

The court gave a very lengthy charge to the jury, in which are numerous separate instructions relative to the various issues involved in the case. Some of these instructions are repeated, and while this repetition might seemingly lay undue stress upon the matters therein embraced, and for that reason was bad practice and improper, yet in this case we can not say that prejudice has resulted sufficient to call for a reversal on that ground.

In its instructions relative to the acts of negligence charged against the defendant, the court confined the consideration of the jury to the following assignments of negligence: (1) As to whether or not the defendant failed to exercise ordinary care to furnish deceased with a reasonably safe place in which to work; and (2) as to whether or not it had failed to properly instruct and warn him. It is urged that the court erred in refusing to instruct the jury relative to the other acts of negligence attributed to the defendant. These, it is claimed, were, (1) a failure to guard or protect the cogs, (2) a failure to furnish a suitable and reasonably safe platform or run board on which to stand while oiling the machinery, (3) a failure to warn deceased of the specific dangers surrounding his work and to instruct him how to avoid the same by the exercise of ordinary care, and (4) negligence in requiring deceased to work so long without rest or sleep,

in consequence of which he was unfit for work on the day of the injury, which was known to the defendant but unknown to him.

We are of the opinion, however, that the alleged acts of negligence in a failure to guard or protect the cogs and to furnish a reasonably safe platform or run board are embraced in the charge given to the jury relative to a failure to furnish a safe place, and are sufficiently covered by the instructions of the court given thereon. On this issue the court instructed the jury in effect that the defendant owed to the deceased the duty to exercise ordinary care to furnish him a reasonably safe place to work, and that a failure on its part to exercise that care, was negligence. It also instructed them that while the defendant was not required to furnish the best machinery, or to have the safest appliances, it was required to exercise ordinary care in that regard, and that if in fact the defendant's appliances were such as were in common and ordinary use in mills of that character, and were equipped in the ordinary way when operated by persons of ordinary care, then there was no negligence on the part of the defendant in failing to furnish proper appliances. It further instructed the jury that "if the decedent was a minor or inexperienced, and by reason thereof did not know or appreciate the danger of his employment, if any, and that the defendant knew or ought to have known this in the exercise of ordinary care on its part, then it was the defendant's duty to so instruct the decedent as to both latent and patent dangers, so that, as far as might be by proper care on his part, the decedent would be enabled to perform his duties in safety to himself; and if you find from the preponderance of the evidence that the defendant failed or neglected to properly discharge any of these duties to the decedent," and that by reason of such neglect or failure the decedent was injured while in the exercise of due care himself, then he did not assume the risk, and the defendant would be liable.

As to the charge of negligence based on the allegation that defendant required deceased to work when he was unfit to do so on account of exhaustion, the plaintiff requested, among other instructions, the following: "If you believe, from a preponderance of the evidence that George Furlow,

on the day he was injured, was unfit to do the work of oiling with safety because of mental and physical exhaustion from long and continuous work for defendant and without rest and sleep, and under orders and direction, and that defendant's foreman knew of his unfit condition, if he was unfit, and, notwithstanding such knowledge, ordered and directed him to continue in the work, and he did so continue and did not himself know of his unfitness, and did not know or appreciate the danger of doing the work in his then condition, and that he was injured because of the negligence complained of in the complaint, then you may find for the plaintiff."

The instruction was predicated upon the alleged testimony tending to show that deceased had worked so long without sleep just prior to the injury that he was unfit to do the work, and that this was known to defendant and not to deceased, and that he was by defendant's superintendent ordered to work on that day. The testimony given by the superintendent was that the deceased desired to and did work over his protest. While there is some testimony on the part of plaintiff tending to show that the superintendent did request him to work on that day, yet this same testimony shows that Furlow subsequently made complaint to the witness because he had not had sufficient rest, and therefore that the deceased fully knew and appreciated his condition, if as a matter of fact he was directed to do this work by the superintendent, and that he did the work without compulsion. The mere fact that plaintiff was working overtime did not impose a special duty on defendant, nor did it relieve deceased from the assumption of any risk arising from that fact. When a servant is at work in the line of his employment, he is subject to the usual risk thereof, although he may be working overtime. As is said in 2 Bailey on Personal Injuries, § 362: "Where a servant is working overtime in the line of his employment, he assumes the risk the same as if the work was being done during the regular hours." *Kehoe* v. *Allen*, 92 Mich. 464.

There was no testimony adduced upon the trial of this case showing or tending to show that the defendant's superintendent knew that the deceased was unfit to continue his work on account of physical or mental exhaustion any better than

the deceased himself knew it. He was nearly twenty-one years old, of average intelligence and experience of one of that age, and had been engaged at this same work for a long time, and there is no testimony indicating that he did not fully know and appreciate his exhausted condition, if such was a fact. The testimony on the part of the plaintiff tending to show physical exhaustion on his part also showed that the deceased appreciated his condition and complained thereof. If he continued his work without compulsion, and with a knowledge and appreciation of his exhaustion, then he assumed the risk arising from any unfitness growing out of that condition. The fact that deceased was a minor did not impose any greater duty or liability upon the defendant, if he was properly instructed and warned. Nor did his minority under such circumstances relieve him from the consequences of the ordinary risks incident to his employment.

On the issue of assumption of risk by the deceased, the court gave a number of instructions. After a careful examination of these, we are of the opinion that they correctly reflected the law relative to the risks assumed by the deceased. The duty incumbent upon the master to furnish a servant with safe appliances and a safe place, and the risks relative thereto assumed by an employee who is also a minor, are well stated by Mr. Justice Battle in the case of *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232.

"It is well settled that when one enters the service of another, he takes upon himself the ordinary risks of the employment in which he engages. On the other hand, the employer takes upon himself an implied obligation to provide the person employed with suitable instruments and means with which to do his work, and to provide a suitable place in which such person, when exercising due care himself, can perform his duty safely or without exposure to dangers that do not come within the obvious scope of his employment. But the servant can dispense with this obligation. If, having sufficient intelligence and knowledge to enable him to see and appreciate the dangers to which he will be exposed, he knowingly assents to occupy a place set apart to him by the master and does so, he thereby assumes the risks incident thereto, and dispenses with the obligation of the master to

furnish him with a better place. It is then no longer a question whether such place could not with reasonable care and diligence be made safe. Having voluntarily accepted the place occupied by him, he can not hold the master liable for injuries received by him because the place was not safe. * * * If, however, the servant, by reason of his youth and inexperience, is not aware of or does not appreciate the danger incident to the work he is employed to do or to the place he is engaged to occupy, he does not assume the risks of his employment until the master apprises him of the dangers. * * * But if such servant receives the information and caution from any source, and accepts the place and undertakes the work, he assumes the risks ordinarily incident thereto, and can not thereafter recover for injuries because the place was not safe. As to such work or place and its dangers, he would then be placed on the footing of an adult, and could not, on account of infancy, be relieved of the consequences of such risks."

These principles have been followed and approved by this court in subsequent cases, and the view taken by this court relative thereto arising from a state of facts very analogous to those involved in this case can be obtained by an examination of the case of *Holmes* v. *Bluff City Lumber Co.,* 97 Ark. 180, and the cases therein cited. It is true that the care to be observed to avoid injury to a minor is greater than that in respect to an adult; but this doctrine is based upon the inexperience and immaturity of the minor, and not upon the fact of his minority itself. When the physical and mental faculties of the minor are as mature as those of an adult, he stands upon the same footing.

The principle is thus stated in 1 Labatt on Master & Servant, § 291: "The principle has frequently been laid down or recognized that a minor assumes the ordinary risks of any employment which he undertakes, in so far as those risks are, or ought to have been, known to or appreciated by him, whether the source of his knowledge be his own observation and experience, or the instructions which he has received from his employer or his employer's representative. In other words, the fact that the servant was a minor does

not enlarge his rights, where it is once established that he understood the danger."

It would serve no useful purpose to set out the various instructions which were given by the court upon the question of assumed risk and to discuss them in detail. It is sufficient to say that we have carefully examined them, and we find that no error was committed by the court in its rulings upon these instructions which would call for a reversel of the case.

Relative to the question of contributory negligence, the court in effect instructed the jury that in determining that question they should consider the age, intelligence and maturity of the deceased; and further told them that any alleged act of negligence on his part must have contributed to produce the injury complained of before plaintiff would be precluded from recovery upon that ground.

The correct determination of this case involved, therefore, simply the determination of questions of fact presented by the conflicting testimony. These questions of fact were fought out before the jury, and by them have been settled. The jury decided these questions of fact in favor of appellee, and we are unable to find any error in the trial of the case which calls for a reversal of the judgment rendered upon that verdict.

The judgment is accordingly affirmed.