WARD ICE COMPANY *v.* BOWERS.

4-3745

Opinion delivered March 11, 1935.

*Lee Cazort, Vincent Miles* and *Duty & Duty,* for appellants.

*John W. Nance,* for appellee.

BAKER, J. The appellants in this case operate an ice plant at Springdale, Arkansas. They do business under the firm name of Ward Ice Company. During the year 1933 the plant being under the control of Homer Rogers, as manager, Stanley Bowers, then about nineteen years of age, was employed by Mr. Rogers to deliver ice for a Fourth of July picnic. Bowers had worked prior to that time in an ice plant at Big Sandy, Texas, and had worked some for the Ward Ice Company icing cars, but had had no experience in the operation of a scoring machine in any of his former places of employment.

Bowers appeared early on the 3rd day of July to begin his work for the distribution of ice for the picnic, and, while waiting for his truck to be brought to the place for loading the ice, he joined with some of the other employees in scoring ice, preparatory to loading it upon trucks. Mr. Rogers, who employed him, had not yet arrived at the plant. It is a disputed question as to whether any one gave any instruction to Bowers, and for the purpose of this opinion it may be conceded that he had no instruction, except such as he gained from his own observation in watching others working about this scoring machine. The scoring machine was used for marking ice so that it could be cut or blocked by the use of ice picks to facilitate the delivery of ice to customers in the approximate weight demanded at the place of delivery.

The scoring machine consists of a steel frame, built of such height and width that a block of ice 42 inches long, 22 inches wide, and 11 inches thick may be run through the machine standing on end, or upright, with the wide surfaces next to the circular saws, and may also be passed through the machine standing on edge or on the 11-inch face. On each side of the space through which the block of ice is caused to pass, there are four circular saws, fixed on the same axle or shaft, and each of these is turned at a very high or rapid rate of speed

by an electric motor on top of the frame supporting the saw mandrels. The ice to be scored is usually placed on end at the front or entrance side of the machine with the 11-inch face of the ice in the machine, and is pushed into the machine by a handle or lever, a part of the machine, until the circular saws catch the ice, and by operation of the saws the ice is carried in the scoring process through the machine to the other side. The saws are so spaced on the mandrels as to cut or mark the block of ice so that it may be broken with an ice pick for the required weight. The saws on one mandrel are set exactly opposite to the saws on the other side.

Bowers says that at the time of his injury, a few minutes after he began work, he had been aiding another employee in scoring ice, one working on one side of the machine and one on the other. Bowers had observed this employee, who with his hands and feet, and without the use of the lever, according to Bowers' statement, forced the ice into the saws for the purpose of scoring. The other employee was called away to wait upon some customer, and Bowers, without being told to do so, undertook to carry on the operation of the machine by himself, and his statement is to the effect that he had a white or milky block of ice, and that in the process of scoring it tilted or, at least, was stopped in the saws; that he took a hook and pulled it back and attempted to push it through with his foot, when his foot was caught and very badly injured. He sued for this injury, setting out a description of the machine and facts substantially as above set forth. From a judgment rendered in his favor, upon the trial of this case, this appeal has been taken.

That part of the testimony which we deem essential to the opinion we have reached in this case will be substantially set forth. Bowers was injured on the 3d day of July, 1933. He lacked only a few days being nineteen years of age at that time. He would have finished high school in 1934 about the time of the trial. He had worked nights loading strawberry cars with ice. He quit this work about three days before he was hurt at 7:30 the morning of July 3d. The scoring machine is

located upon the ice dock against the wall. He was to use a delivery truck in delivering ice to the park ground. He knew where to get the ice and to pull it down a slide, and, if it hadn't been scored, it would have to be and then be put upon a truck. A cake of ice weighs 300 pounds. He says that the ice is set upon the end at the machine, which has the eight saws, and then is run through the saws. He had seen a scoring machine several years before, but had never worked around one. He was not instructed or told to score the ice, but he thought it was his duty to do so and went ahead. No one made any objection. Other drivers were scoring ice. Clarence Austin set his cake of ice up to the machine and pushed it through with his foot. He was the only one he had seen scoring ice. Had scored about three blocks before he got caught. He had started a milky cake of ice through the machine, and it had stuck. He used a hook to pull it back and then put his foot on the bottom of the cake of ice and started to push with his hand and foot, then it turned loose and his foot got caught in one of the saws and was ripped off. No one told him how to do the work. No one told him it was a dangerous machine. He had seen ice scored prior to that time. He had seen some other man put his foot on the ice and push it through. Clarence Austin had told him to be careful pulling the ice down the slide, but Austin was waiting on a customer at the time of the injury. Rogers had not arrived at the plant at the time the accident occurred.

Bowers testified he was six feet one inch tall at the time he was injured and weighed 198 pounds.

The following are questions propounded to Bowers and his answers: "Q. Nobody ever told you to operate that machine? A. I was told to load my truck. Q. But they didn't tell you to score ice? A. I figured it was my duty. Q. Stanley, anybody can look at that machine and see it is a very dangerous thing to operate, can't they? A. Yes. Q. You didn't have to be told that it was dangerous, did you? A. No, sir. Q. You knew that it was very dangerous? A. Yes. Q. What is this thing with a handle that you see there (indicating)? A. That looks like a handle they later began to use after I

was hurt. Q. Don't you know that right in front of the machine there is a handle to hold to that is bolted on that machine, and comes with it out of the factory, and has been on it ever since it has been there, and didn't you hold to the big steel handle? A. Yes, that is what kept me from going through the saw. Now this is the back side you are looking through it. Q. (Indicating). What is this up here you see here? A. That is a handle they began using after I was hurt. Q. Do you tell the jury that was what they used to push that block of ice through? A. Yes, it was there, but it was pushed up against the wall. Q. Why didn't you pull it out? A. I never saw anybody else use it. Q. You knew what it was for, didn't you? A. No, sir. Q. Didn't you see that thing take hold, they just had this thing over the ice and pushed the ice right in, didn't you see it? A. I seen it. Q. Didn't you know what it was for? A. No, sir. I was about a foot from these saws when I had my hand on the handle. They are about a foot back inside the machine. Q. You knew it was very dangerous to stick your foot in the saw? A. Certainly I knew it was. I had seen everybody else kick the ice through. I didn't stop to think. Q. Any one could look and see that machine was dangerous, couldn't they? A. I believe they could. I was trying to do it like the rest of them. I had seen the machine several times in operation. I don't remember when I saw Austin push the ice through with his foot. I had seen Samuels and Howerton do it. I never thought about the danger. The machine was dangerous, but a person didn't think about that. Q. I say, you didn't have to have anybody tell you it was dangerous to get your foot in there? A. No.''

Again he says that he had not worked around a scoring machine. He knew that a circular saw was dangerous.

At the close of the testimony the trial judge made this comment when asked to give a directed verdict: ''If he is intelligent enough to realize the danger of putting his foot in this place, it wouldn't make any difference if the others had been doing it for twenty years. It looks to me like that danger was obvious and patent, but he might not have appreciated it; I don't know. I believe I

will submit it to the jury. I think I am placing myself in a position, in all probability, to be reversed. Motion is overruled.''

We have given careful study to all of this testimony, more particularly the testimony of Stanley Bowers. The only theory upon which this case could have gone to the jury for its consideration was that he should have been instructed and cautioned about the use of the machine and concerning its dangers.

We assume, although he was not directed or told by any one in authority to operate the machine, he believed that, when he accepted employment, it was a direction to mark or score his ice for delivery.

We are forced to the conclusion that, as this machine was open, the saws were in full vision of the plaintiff, and the danger in the operation of the machine was patent. Appellee himself so states. He knew that, and says that he knew that, if he got his foot in contact with any of the saws, it would injure him. Instruction or orders in regard thereto would have given him no information he did not possess.

The appellee testified with a reasonable intelligence. His answers are clear, full, unequivocal, that he did know the danger. He knew also that ice on any smooth, hard surface slips if pushed. He did not so testify, but that is a fact every normal boy learns very early in life in climates such as ours. When the ice block ''stuck,'' after the saws had engaged or taken hold of it, he knew he should use a hook and not his hand to insert into the machine to withdraw this block of ice. Upon what theory then should we hold he did not know he should not insert his foot? He was thoughtful to use the hook, but says he did not think when he kicked or pushed the ice with his foot a moment later. He had seen the scoring machine in operation several times before the day of his injury. He knew how it worked. He could see every part of it. He knew the saws were back in the framework, at least, a foot from the f r o n t where ice was inserted.

We fail to see how the Ward Ice Company could have so instructed him or cautioned him as to have prevented

this injury. He knew every ordinary danger or hazard present. It could not expect or anticipate he would kick his foot into a saw, and most probably no one would think to warn him against doing so. No one would warn an employee against putting his hand into a furnace of fire. The appellee would have been expected to have done the one as readily as he would have done the other. The appellee was not injured in this case by reason of any defect in the machinery, and his right to recover must be determined upon the question whether the appellants were negligent in any respect alleged.

This court said in the case of *Furlow* v. *United Oil Mills,* 104 Ark. 489, 149 S. W. 69: "But if such servant receives the information and caution from any source, and accepts the place and undertakes the work, he assumes the risks ordinarily incident thereto, and cannot thereafter recover for injuries because the place was not safe. As to such work or place and its dangers, he would then be placed on the footing of an adult and could not, on account of infancy, be relieved of the consequences of such risks." This quoted paragraph is taken from an opinion by Mr. Justice BATTLE in the case of *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232, 19 S. W. 600.

The same principle as stated in the case of *Furlow* v. *United Oil Mills, supra,* has been constantly followed by this court, and, as said by 1 Labatt on Master & Servant, § 291, and quoted in the above opinion: "In other words, the fact that the servant was a minor does not enlarge his rights, where it is once established that he understood the danger." Since appellee has shown by his own testimony his knowledge and appreciation of the danger, instructions or warnings were not necessary. *Brackett* v. *Queen,* 162 Ark. 525, 258 S. W. 635.

In our consideration of this matter before us, we are not overlooking the theory of such cases as *Wisconsin & Ark. Lbr. Co.* v. *Otts,* 178 Ark. 282, 10 S. W. (2d) 364. In that case there was an old or worn, or defective belt operating the machine. The belt broke and struck the plaintiff, knocking him several feet and rendering him unconscious, and he sued for the consequent injury therefrom. The servant in that case knew that the belt was

594

defective. He had had some experience. He was a young man only about nineteen or twenty years old. He testified there was no guard there at any time he worked there, and that he would not have used the old belt unless the foreman had told him that it was safe and would not break. But there is quite a distinction in cases of that kind and the one under consideration. There was room, at least, in Ott's case, for opinion as to safety or unsafety in the use of the machine. An older or more experienced person might have been better able to anticipate the danger and consequent injury or he might have been able to judge better than the inexperienced servant the length of time the defective belt might continue to operate without breaking.

In the case like the one before us, there could be no dispute as to the ever-present danger to one who would carelessly come in contact with the saws and the resulting injury therefrom.

It makes little difference in this case whether we attempt to distinguish between contributory negligence on the part of the appellee and assumption of risk. The appellee's injury resulted wholly without fault of appellants, and we cannot declare industry insurers for the protection of those who may be injured in accidents unaccompanied by the employer's negligence. We must hold that the court erred in this case.

The judgment is therefore reversed, and the cause dismissed.

SMITH and MEHAFFY, JJ., dissent.