EVERTON SILICA SAND COMPANY, INC. *v.* HICKS.

4-5400    125 S. W. 2d 793

Opinion delivered March 6, 1939.

*W. S. Walker, John H. Shouse* and *J. Loyd Shouse,* for appellant.

*Ben E. McFerrin, Ben C. Henley* and *Tom W. Campbell*, for appellee.

MEHAFFY, J. This action was instituted by appellees against the appellant, Everton Silica Sand Company, Incorporated, in the Boone circuit court to recover damages for personal injury to Harold Hicks, who was seventeen years old at the time.

V. A. Hicks, the father of Harold Hicks, sued as next friend of Harold Hicks, and also in his own behalf. The appellant, Everton Silica Sand Company, Inc., is a corporation under the laws of Arkansas engaged in the silica sand business at Everton, Arkansas. It is alleged that on July 23, 1937, Harold Hicks was working as an employee of the appellant at Everton when he sustained serious and permanent injury, caused by the negligence of the appellant. Harold Hicks was working in the second story of said plant approximately twelve feet above the floor of the second story, where there were two cog wheels operating on separate shafts, the cogs fitting into and between each other; he had worked at the plant only a short time; he was ordered by his foreman to go up where the cog wheels were located and oil them by pouring crude oil upon the cogs; no instructions were given him as to rules and methods of safety; the only method he had ever seen employed in oiling the wheels was to take a small can, dip it into crude oil, and pour the oil from the can onto the cogs while the machinery was in operation; while the wheels were turning, the only way he could get near the cog wheels was to climb upon a plank about two inches thick, ten inches wide, and twenty feet long, extending from two walls or platforms about ten feet above the second floor; there were no supports for said plank other than the pillars at the ends thereof, leaving some 18 or 20 feet between the ends unsupported and permitting said plank to sag in the middle; that the plank extended within two or three feet of the cog wheels, and to oil them it was necessary for appellee to stand upon the plank and reach over the end of an intervening beam, a distance of two or three feet, to pour the oil while in a stooping position; the weight of appellee caused the plank

to sag and this caused appellee's foot to slip while he was in the act of pouring oil on the wheel, and he was caused to fall forward; his right hand caught in the cog wheels, crushing and mangling his hand so that his right arm had to be amputated. The negligence consisted in failure to instruct as to the proper and safe manner of oiling the wheels, and failure to warn him of danger, and failure to furnish him reasonably safe instrumentalities and appliances, and to provide him a reasonably safe place on which to stand.

Harold Hicks sought to recover for his injury, and V. A. Hicks for loss of services of his son and moneys expended for doctor's bills and other expenses incident to the injuries.

The appellant answered denying the material allegations of the complaint, pleading assumption of risk and contributory negligence.

There was a verdict and judgment for Harold Hicks in the sum of $3,150 and for V. A. Hicks in the sum of $350. The case is here on appeal.

Harold Hicks, a boy seventeen years old, began work for appellant on June 1, 1937, and was injured on July 23rd, thereafter. The building where he worked was two stories, and he had to work in both stories. His job was to keep the screen clean, and oil up the machinery in the morning before it started, if it needed oiling. The cog-wheels which he was oiling at the time he was injured did not have to be oiled every morning, but only once or twice a week; he was instructed to oil them when they needed it. In order to oil the cog wheels, he had to climb up strips nailed on the wall to a height of ten or twelve feet. There was a plank ten or twelve feet above the floor of the second story which was about two inches thick, twelve inches wide, and about twelve feet long. He had to stand on this plank and stoop over to pour the oil on the cogs; there was no support under the plank except at each end, and it sagged. While he was stooping over oiling the cogwheels, his foot slipped and his hand was caught in the cogwheels; his hand and arm were crushed, so that his right arm had to be amputated; he had received no instructions whatever from anyone;

he had simply been told by the foreman to oil the cogs when they needed it; his foreman had told him not to stop the machinery to oil the cogs unless it had to be stopped; his arm was crushed up to near his shoulder; he knew about the cogwheels, and, of course, knew they were dangerous.

Two or three witnesses for appellant testified that shortly after his injury he stated to them that he did not know how it happened. These witnesses also stated that he did not seem to be suffering much at the time. One witness testified that she told appellee that he had made a mistake and that he said: "Yes, that is true." At the same time she inquired how the accident happened, and he said he guessed he was where he had no business, but he thought he could get away with it. This conversation was after they brought him to the hospital, but before they amputated his arm. There was also some evidence introduced by the appellant to the effect that the plank did not sag.

The evidence shows that V. A. Hicks, father of the boy, owed a doctor's bill of $259 and another bill of $10, and expenses for dressing of $3, and that what he had spent because of the injury, together with the doctor's bill, amounted to something over $300.

All of the evidence shows that the boy was strong and healthy and was earning $50 per month.

It is first contended by appellant that the evidence is not sufficient to sustain the judgment, and that appellant was entitled to a directed verdict. It is argued that the danger, if any existed, was open and patent; that there were no hidden or latent dangers about the place of employment.

An adult servant, when he enters employment, assumes all the risks and hazards incident to the employment. He does not, however, assume any risk that results from the negligence of the master or any other servants, unless he knows of such risks. But this is not true where the servant is a seventeen-year-old boy. In order to assume the risk he not only must know of the danger, but must appreciate it, comprehend it; and everyone knows that a seventeen-year-old boy does not possess the judg-

ment of a grown person. The authorities are practically unanimous in holding that such a person must be warned and instructed if he is to be exposed to dangerous machinery.

The general rule is stated as follows:

"(1) That the master owes a duty towards an employee who is directed to perform a hazardous and dangerous work, or to perform his work in a dangerous place, when the employee, from want of age, experience, or general capacity, does not comprehend the dangers, to point out to him the dangers incident to the employment, and thus enable him to comprehend, and so avoid them, and that neglect to discharge such duty is gross negligence on the part of the employer; (2) that such an employee does not assume the risk of the dangers incident to such hazardous employment, because he does not comprehend them, and the law will not, therefore, presume that he contracted to assume them." Labatt's Master & Servant, Vol. 3, p. 3067.

Appellant cites and relies on a number of authorities, but in each of the cases where the servant was held to assume the risk, the servant was either an adult, or if a minor, had been given instructions and warnings. In the case of *Arkadelphia Lbr. Co.* v. *Henderson,* 84 Ark. 382, 105 S. W. 882, a seventeen-year-old boy was injured. The court discussed the rule as to assumption of risk by servants, and said:

"If the danger of the employment is patent, and the servant, by reason of his youth and inexperience, does not know or appreciate the danger incident to the service he is employed to do, it would be the duty of the master to warn him of it and instruct him to avoid it, so far as it can be, before exposing him to it. (Citing authorities.) In all cases where there is a duty to warn a servant, it would be a breach of such duty to expose him to such dangers without giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the dangers and the necessity for the exercise of due care and precaution, and to do the work safely, so far as it can be done with the proper care on his part.

For a breach of this duty the master is liable for the damages resulting therefrom.''

Appellant calls attention to the case of *Furlow* v. *United Oil Mills,* 104 Ark. 489, 149 S. W. 69, 45 L. R. A., N. S., 372. In that case the court said:

''If, however, the servant, by reason of his youth and inexperience, is not aware of or does not appreciate the danger incident to the work he is employed to do or to the place he is engaged to occupy, he does not assume the risks of his employment until the master apprises him of the dangers.''

It is contended that the court erred in giving instruction A, which reads as follows:

''The jury is instructed that it is the duty of every company employing young and inexperienced employees in Arkansas to instruct such employees as to the proper manner to do the work they are employed to do; and if you find from a preponderance of the evidence that Harold Hicks was young and inexperienced in the work he was employed to do for the defendant company, then it was the company's duty to so instruct him.''

The specific objection urged to this instruction is that it broadens the duty of the defendant beyond the requirements of the law. We do not think so, and appellant does not point out wherein it broadens the duty. Another objection urged to it is because appellant says there is no evidence in the record that the plaintiff was inexperienced, nor that there was a failure to warn him, or that there were any dangers of which he was not fully advised.

The appellee testified that he did not receive any warning or instruction from anybody.

Appellant also urges that there was no evidence that the appellee was inexperienced. The law is that warning and instruction must be given if the employee is inexperienced or a minor. In this case there is no dispute about the fact that the appellee was only seventeen years of age. The appellee did not state that he appreciated the dangers, and it is matter of common knowledge that a boy seventeen years of age does not possess discretion and judgment and appreciate dangers as an older person would. He knew the cogs were there and knew it was

986

dangerous, but there is no evidence that he appreciated the danger.

It is urged that instruction B was wrong because the court told the jury that it was the duty of a corporation employing men to use care, etc. Of course, it is the duty of a master generally, whether it is a corporation or individual, and no prejudice could have resulted from the use of the word "corporation."

The objection urged to instruction No. 1 is, first, that no ordinary jury could understand it, and that it is confusing and misleading. The instruction is very long, but we do not think it is misleading or confusing, or that it imposes a higher duty on appellant than is required by law.

It would serve no useful purpose to discuss in detail all the instructions, but we have carefully considered all of them and have reached the conclusion that the instructions, considered as a whole, correctly stated the law to the jury.

The law is well settled in this jurisdiction that the master is liable for injury to a minor by dangerous machinery unless the minor has been given proper warning and instructions.

The judgment is affirmed.